GEBHARDT, Respondent, v. ST. LOUIS, MEMPHIS
& SOUTHEASTERN RAILROAD COMPANY,
Appellant.

**St. Louis Court of Appeals, February 5, 1907.**

1. **RAILROADS: Ditches and Drains: Measure of Damages.** In an action against a railroad company for damages caused to plaintiff's land and crop by the negligent ditching by the defendant along its roadbed, in violation of section 1110, Revised Statutes of 1899, and consequent overflow of plaintiff's land by surface water, the measure of plaintiff's damages was the permanent depreciation in the value of the land overflowed and the loss of the crop destroyed by the overflow.

2. ———: ———: ———: **Inconsistent Instructions.** An instruction for plaintiff in such case which stated his measure of damages was not inconsistent with an instruction given for the defendant to the effect that the plaintiff could not recover damages suffered after the date of bringing the suit.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney*, Judge.

AFFIRMED.

*L. F. Parker* and *J. G. Egan* for appellant.

(1) The difference in the value of plaintiff's land before and after the overflow in question, or before and after the diversion of the surface water by the embankment and culvert, was not the legal measure of plaintiff's damages, and plaintiff had no right to recover permanent damages. Ready v. Railroad, 98 Mo. App. 470; Brown v. Railroad, 80 Mo. 460; Pinney v. Berry, 61 Mo. 368; Benson v. Railroad, 78 Mo. 511; Foncannon v. Kirksville, 88 Mo. App. 284; Porter v. Railroad, 103 Mo. App. 431; Smith v. Railroad, 98 Mo. 20. (2) The giving of an instruction stating the correct rule of law by the court on the question of allowing damages for the depreciation in the value of the land, did not cure the

instruction of the court giving the wrong rule upon this question.   Sheperd v. Transit Co., 189 Mo. 373; Mansur-Tebbetts Imp. Co. v. Ritchie, 143 Mo. 612; Wojtylak v. Coal Co., 188 Mo. 283; Livingston v. Railroad, 170 Mo. 469; Stone v. Hunt, 94 Mo. 480; Martinowsky v. Hannibal, 35 Mo. App. 76.

*R. L. Johnston* and *J. C. Kiskaddon* for respondent.

Surface waters are waters of a casual character, and such as usually come from rains and melting snows. They may flow through depressions in the surface of the country, but unless they have the permanent character of a water-course, they are surface waters.   24 Am. and Eng. Ency. of Law (1 Ed.), 896; Benson v. Railroad, 78 Mo. 514; Railroad v. Schneider, 30 Mo. App. 623.

STATEMENT.—Plaintiff owns a parcel of land in Carondelet township, St. Louis county, through which defendant's railroad passes.   On October 15, 1902, in consideration of one thousand dollars to him paid, plaintiff conveyed to defendant a strip one hundred feet wide, running north and south through his land, for use as a railroad right of way, together with the right to alter water-courses.   The land east of the right of way is hilly and slopes to the west.   Plaintiff's land on the west side of the right of way is about level, but slopes slightly to the west.   A ditch, having its source in the hills, runs west through plaintiff's land and empties into Mattese creek.   Prior to the construction of the railroad, this ditch received and carried off surface waters falling on plaintiff's land, and lands to the east of him.   Defendant erected an embankment about ten feet high across this ditch, to receive its track.   To take care of the surface water on the east side of the roadbed, the company put in a thirty-inch tile culvert, thirty to sixty feet south of the old ditch, and from the latter dug a side ditch on its right of way south to the culvert, and from the mouth of the culvert constructed a ditch back north

to the old ditch. Defendant's engineer testified the culvert was placed at the point of lowest grade, and it was believed the side ditch on the west side of the fill would convey the surface water flowing through the culvert north to the old ditch. Plaintiff was a truck farmer, and in the year 1904, had, what he and his witnesses estimated to be, one and one-fourth acres in strawberries adjacent to and west of defendant's right of way and ten feet south of and parallel with the old ditch. The dirt from the ditch dug on the west side of the railroad was thrown to and banked on the west side of the ditch. In May, 1904, when plaintiff's berries were beginning to ripen, there was a considerable rainfall and the surface waters flowed through the thirty-inch culvert in such volume and with such force as to overflow the lateral ditch on the west side of the embankment, and tear out the embankment at the mouth of the culvert, from whence they escaped and run over plaintiff's berry patch.

Plaintiff's evidence tends to show that prior to the construction of the defendant's railroad, the old ditch carried off all the surface waters and he suffered no injury therefrom; that by the breaking of the railroad ditch at the mouth of the culvert, his berry patch was totally destroyed and about all the land on which his plants were growing was covered from two to six inches deep with clay, gravel and sand; that before the overflow this land was worth two hundred dollars per acre, and after the overflow it was worth no more than fifty dollars per acre; that his crop of berries, if they had been permitted to mature, would have been worth from six to seven hundred dollars.

Defendant's evidence tends to show that by actual measurement, plaintiff had but nine-tenths of an acre in strawberries; that the grade in the center of the patch was below the grade of the old ditch and there was a slope from north to south to the center of the berry patch, and the overflow only spread over a strip

of ground from ten to fifteen feet wide, running through the center of the strawberry patch; that no clay, sand or gravel was deposited upon the land and no damage done to the land and but very little to the strawberries and plants; that plaintiff picked and marketed berries from the patch within two or three weeks after the overflow.

In rebuttal plaintiff's evidence tends to show he neither picked nor marketed any strawberries during the season of 1904. The case was tried on an amended petition. The original one, offered in evidence by defendant, alleged that defendant, by the construction of its embankment through plaintiff's land, diverted the flow of water of a natural water-course from its proper and regular channel, and drained the waters thereof onto plaintiff's property. Some of the witnesses speak of the old ditch as a creek and as a water-course, but witnesses, who had resided in the neighborhood from nine to thirty-five years, and were well acquainted with the ditch, all testified that when there was no rain or snow the ditch was dry and only served to drain surface water from the contiguous hills, where it had its source.

Verdict and judgment were for plaintiff in the sum of three hundred dollars.

The amended petition, on which the case was tried, alleged that defendant "carelessly and negligently constructed an embankment along and on its right of way adjacent to plaintiff's said real estate, and in doing so carelessly and negligently obstructed the flow of surface water which from time to time accumulated east of said embankment, and which said surface water without said embankment would and did naturally flow along a depression or ravine; that said embankment was carelessly and negligently constructed by defendant across said natural depression or ravine, and by ditches carelessly and negligently constructed by defendant east of said embankment the surface water was conducted to a point opposite plaintiff's said property, and was by defendant

carelessly and negligently accumulated in a body, and from thence to and through a culvert or pipe, carelessly and negligently constructed by defendant, under and across its right of way, was by defendant carelessly and negligently thrown and precipitated in a body onto plaintiff's said property, whereby," etc.

The answer was, first, a general denial.

"For a second defense the defendant alleged that the plaintiff and his wife, had, for a consideration of one thousand dollars to them paid by the defendant, by a written deed, granted to the defendant a strip of land one hundred feet wide at the place in question for a railroad right of way, and also the right to alter water-courses, and that the deed included the right, by the defendant, to construct and maintain an embankment at the place in question and to construct, maintain and operate a railroad upon said right of way, and to obstruct, divert and change the flow of any surface water. That the plaintiff in his original petition alleged that there was a natural water-course at the place in question and that the defendant had diverted the flow and thrown the water thereof on the property of the plaintiff."

The court gave the following instructions for plaintiff:

"1. If the jury believe from the evidence that plaintiff is and was at all times mentioned in the evidence the owner of the land described in the petition; and if the jury further believe that defendant constructed an embankment along and on its right of way, adjacent to plaintiff's said property; and if the jury further believe that said embankment obstructed the flow of surface water which from time to time accumulated east of said embankment; and that said surface water without said embankment would naturally flow along a depression; and if the jury further believe that defendant constructed said embankment across said depression; and if the

jury further believe that the said surface water was by ditches, constructed by defendant, conducted to a point opposite plaintiff's said land, and that thereby said surface water was collected into a body, and that said water was then from thence through a culvert or pipe, constructed by defendant, precipitated and thrown in a body onto plaintiff's said land; and if the jury further believe that the defendant was negligent in so collecting and conducting said water by said ditches and pipe or culvert, and throwing the same onto plaintiff's land; and if the jury further believe that by the action of said surface water so thrown in a body onto plaintiff's said land, said land was covered with clay and sand and made unfit for cultivation, and a strawberry bed then on plaintiff's said land was destroyed or injured and that thereby plaintiff was and will be deprived of the use of said land; the plaintiff is entitled to recover such damages as he may have sustained by such acts of defendant.

"3. If the jury find in favor of the plaintiff, and that plaintiff has suffered injury by reason of negligent acts of the defendant, as set forth in the first instruction, the jury will assess plaintiff's damages at his actual loss, if any, by reason of injury to his strawberry crop caused by such negligent acts, and if they further believe that he has suffered permanent injury to and depreciation of his land by reason of such negligent acts prior to August 30, 1904, then the jury should allow him as damages the difference in value of such land before and after such injury."

And the court gave the following instruction for defendant on the measure of damages:

"5. I instruct you that the plaintiff is not entitled to recover in this action any damages he may have suffered as claimed in his petition after August 30, 1904, the date of the filing of this suit."

BLAND, P. J. (after stating the facts).—1. Two points are relied on by defendant for a reversal of the

judgment; first, that plaintiff's instruction on the meas-use of damages is erroneous; and, second, that said in-struction conflicts with defendant's instruction No. 5, supra.

Defendant undertook to comply with section 1110, Revised Statutes 1899, by putting in the thirty-inch cul-vert and by the construction of the lateral ditches along the sides of its railroad. It is not contended in defend-ant's brief that the old ditch was a natural water-course. The contention is that plaintiff might have constructed a sufficient ditch to protect his land, or that one could have been constructed, to convey all surface waters that flow through the culvert north to the old ditch, and for these reasons the measure of damages is the reasonable cost of such a ditch, plus the actual damages done the strawberries and plants. There would be some force in this contention, had not defendant constructed a ditch which it deemed sufficient to protect plaintiff's land. The gravamen of the charge is not, that defendant failed to construct a ditch, but that it negligently constructed a ditch inadequate to protect plaintiff's land, and by reason of this negligence, plaintiff's land was overflowed by surface waters and damaged. The negligence com-plained of was not one of omission but one of commis-sion, and if proven by the evidence, defendant was liable for whatever damages were caused by its negligent con-struction of the ditch at the mouth of its culvert north to the old ditch. In respect to these damages, plaintiff's evidence tends to prove that the portion of his land that was overflowed was rich, tillable land, worth two hun-dred dollars per acre before the overflow, and by reason of clay, sand and gravel being deposited thereon, its value was depreciated one hundred and fifty dollars per acre. The deposit of clay, etc., and the consequential depreciation in value was not a mere passing, temporary injury to the land, but a permanent one for which plain-

tiff is entitled to recover, and we think his instruction on the measure of damages was proper.

2. Defendant's fifth instruction was perhaps given to the jury for the purpose of confining them, in estimating the damages, to the immediate damages caused by the overflow, viz., injury to the strawberry bed and the difference between the value of the land immediately before and immediately after the overflow. It is not in conflict with plaintiff's instruction on the measure of damages, in fact, it has no meaning or place in the case, unless it was given for the purpose above indicated.

Discovering no reversible error in the record, the judgment is affirmed. All concur.